ERNEST W. PERRY *vs.* EDWARD BANGS & another.
THOMAS W. SOUTHARD *vs.* SAME.

Suffolk.   November 21, 1893. — March 5, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Neglect of Owner of Hotel to provide Means of Escape from Fire — Liability to*
*Action — Statute.*

The owner of a hotel cannot be said to have violated the provisions of St. 1888,
c. 426, § 1, so as to be liable to an action, under § 12, for injuries occasioned by his
neglect to provide proper and sufficient ways of egress or other means of escape
from fire, until after the inspector of buildings has decided what ways of egress
or means of escape are in his opinion necessary, and has given nótice thereof in
writing to the owner, specifying the same, and the owner has neglected or re-
fused to comply with the order of the inspector.

FIELD, C. J.   These two actions are by different plaintiffs
against the same defendants; the declarations are the same in
both, and the demurrers are the same.   The actions are brought
under St. 1888, c. 426, §§ 1 and 12, and the allegations are in
substance that the defendants were the owners of a hotel in the
city of Boston " in which ten or more persons were· lodging and
residing above the second story "; that said hotel was not pro-
vided " with proper ways of egress or other means of escape
from fire, sufficient for the use of all persons accommodated,
assembling, employed, lodging, and residing in said hotel, and
that the defendants neglected to supply the same "; that the
plaintiffs were guests at said hotel, " lawfully and properly lodg-
ing therein, above the second story "; that on March 29, 1892,
a fire " broke out in said hotel, and the same was burned ";
and that during said fire the plaintiffs, while in the exercise of
due care, were injured by reason of the failure and neglect of
the defendants to provide " proper and sufficient ways of egress
or other means of escape from fire from said hotel."

It is necessary to examine in detail the provisions of the stat-
ute.   The act was passed for the whole Commonwealth, and was
to be enforced by the inspectors of factories and public build-
ings assigned to such duty by the chief of the district police
force in all places but the city of Boston, and in the city of

Boston by the inspector of buildings. The act went into effect on July 1, 1888. The sections of the act from one to eight inclusive were repealed, so far as they relate to the city of Boston, by St. 1892, c. 419, § 138, but the repeal was some time after the fire in the present cases is alleged to have occurred.

Section 1 of St. 1888, c. 426, first describes the buildings to be subject to the provisions of the act, and this description includes "every hotel, family hotel, apartment house, boarding house, lodging house, or tenement house in which ten or more persons lodge or reside above the second story." The description ends as follows: "and every factory, workshop, mercantile or other establishment the owner, lessee, or occupant of which is notified in writing by the inspector hereinafter mentioned that the provisions of this act are deemed by him applicable thereto, shall be provided with proper ways of egress or other means of escape from fire, sufficient for the use of all persons accommodated, assembling, employed, lodging, or residing in such building." We assume that the words requiring a notice in writing from the inspector that he deems the provisions of the act applicable to certain establishments apply only to the buildings or establishments mentioned in the last clause of the description, and that a hotel in which more than ten persons lodge or reside above the second story is subject to the provisions of the act, even if no such notice has been given by an inspector. The first section then goes on to require that certain things shall be done if the inspector shall "so direct in writing," and it ends with certain absolute requirements concerning portable seats in the aisles and the passageways of any building subject to the provisions of the act during any service or entertainment, and concerning the proscenium or curtain opening of all theatres.

The second section makes it the duty of the inspector to examine all buildings subject to the provisions of the act within the city of Boston. If, in his judgment, any such building conforms to the requirements of the act, he is required to issue to the owner, lessee, or occupant his certificate to that effect, "specifying the number of persons for whom the ways of egress or means of escape from fire are deemed to be sufficient." Such certificate, while it continues in force, is conclusive evidence of a compliance with the provisions of the act, but becomes of no

effect if more persons than the number specified are accommodated or lodged in the building, or if the building is used for a materially different purpose, or the internal arrangements of the building are materially altered, or the ways of egress or means of escape are rendered unavailable or are materially changed.

By § 3, upon application for the granting of such a certificate, the inspector is required to issue an acknowledgment of such application, which for a certain length of time pending the granting or refusal of a certificate has the same effect as a certificate.

By § 4, when a certificate has been issued, and a change is made in the premises or in the use thereof which terminates the effect of the certificate, it is the duty of the person making the change to give notice thereof to the inspector.

By § 5, if the inspector finds that any building subject to the provisions of the act fails to conform thereto, or that any change has been made which terminates the effect of the certificate, it becomes his duty " to give notice in writing to the owner, lessee, or occupant of such building, specifying and describing what additional ways of egress or means of escape from fire are necessary " in his opinion.

By § 6, in case any such building is owned, leased, or occupied jointly or severally by different persons, any one shall have the right to apply to any part of the outside of the building " any ways of egress or means of escape from fire specified and described by an inspector as above provided, notwithstanding the objection of any other such owner, lessee, or occupant."

Section 8 contains an absolute prohibition against placing in any building which is subject to the provisions of the act any wooden flue or air duct for heating or ventilating purposes, and against placing any pipe for conveying hot air or steam nearer than one inch to any woodwork, unless protected to the satisfaction of the inspector by suitable guards or casings of incombustible material.

Section 9 contains an absolute requirement that every story above the second, in buildings subject to the provisions of § 1, shall be supplied with means of extinguishing fire, which are described in the section.

By § 10 it is made the duty of the inspector to enforce the provisions of the act, and for that purpose there is given to him

the right of access to all buildings which are subject to its provisions.

By § 12 it is made the duty of every owner, lessee, or occupant of any of the buildings which are subject to the provisions of the act, to cause the provisions to be carried out, and if he fails to do so he is made subject to a fine, but it is provided that "no prosecution therefor shall be brought until four weeks after written notice from an inspector, as above provided, of the changes necessary to be made in order to conform thereto, nor then, if in the mean time such changes have been made in accordance with such notification." It is also provided that "any such owner, lessee, or occupant shall be liable for all damages caused by his violation of the provisions of this act," and there is a further provision that any person using or occupying a building contrary to the provisions of the act may be enjoined from such use or occupation.

This statute was amended by St. 1890, c. 438, which provided in effect for an appeal from any order of an inspector by an application to the Superior Court for an injunction against the enforcement of any such order.

This examination of the statute shows that, while certain of the requirements of the statute are specific and absolute, there is no specification in the statute of what shall constitute "proper ways of egress, or other means of escape from fire, sufficient for the use of all persons accommodated," etc. Perhaps from the nature of the subject, and the different kinds of buildings mentioned, their various sizes and uses, it was impossible to lay down any fixed rule applicable to all buildings described in the act. The first section, therefore, assumes that there will always be one way of egress, and provides that "every room above the second story in any such building in which ten or more persons are employed shall be provided, if the inspector mentioned in the following section shall so direct in writing, with more than one way of egress by stairways on the inside or outside of the building, placed as near as practicable at opposite ends of such room." The section then prescribes certain requirements concerning the stairways, if they are on the outside of the building, but it leaves it to the inspector to determine whether the additional stairways shall be on the inside or out-

side. The right given by the sixth section is limited to the " right to apply to any part of the outside of such building, and to sustain from any part of the outside wall thereof, any way of egress or means of escape from fire, specified and described by an inspector as above provided." The duty of the inspector by section five is to specify and describe " what additional ways of egress or means of escape from fire are necessary," etc., and his duty by the second section is to examine all buildings subject to the provisions of the act.

Whether proper ways of egress or other sufficient means of escape from fire are provided in any hotel is necessarily a matter upon which men may often differ in opinion, and we think it was not the intention of the act to leave it to a jury to determine after a fire whether there were proper ways of egress, or sufficient means of escape. We are of opinion that the intention was that the inspector should decide this question, and that only after the inspector has decided it, and has given notice in writing specifying what additional ways of egress or means of escape from fire are necessary, and the owner, lessee, or occupant has neglected or refused to comply with the order of the inspector, can it be said that the owner, lessee, or occupant has violated the provisions of the act concerning proper ways of egress or means of escape from fire. Whatever may have been the reason for enacting the third section, we are not convinced that its provisions were intended to contravene the general intent of the statute that the inspector should determine and direct in writing what ways of egress or means of escape from fire should be provided in addition to those already existing. After the passage of St. 1890, c. 438, the ultimate decision must be by the experts appointed by the Superior Court on an application for an injunction, if the person aggrieved by the order of the inspector makes seasonable application to that court. In no event is the sufficiency of the ways of egress or means of escape from fire to be determined by a jury. The question for a jury, so far as proper ways of egress or means of escape are concerned, is, whether the defendant has complied with the written directions of the inspector, or with these directions as modified on application to the Superior Court.

We have found it unnecessary to consider whether the limita-

tion upon prosecutions found in the twelfth section applies to actions for damages, or to determine other questions which may arise in an action against the owners of a building of which they were not in occupation at the time of the fire.

*Judgments for the defendants affirmed.*

*J. D. Long & A. F. Butterworth,* for the plaintiffs.

*F. L. Hayes,* (*E. A. Bangs* with him,) for the defendants.