FLORENCE E. HUNTER & others *vs.* SCHOOL COMMITTEE OF
CAMBRIDGE & others.

Middlesex.    January 8, 1923. — March 2, 1923.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Mandamus. Practice, Civil,* Report. *School and School Committee. Cambridge.*

When a petition for a writ of mandamus is reported by a single justice for determination by the full court upon the petition, answers and facts found by an auditor, which the justice finds to be as stated, the element of discretion is not involved, and the only question for determination is whether the writ ought to issue as a matter of law.

Spec. St. 1919, c. 248, did not require the school committee of Cambridge to expend for salaries of teachers all money appropriated in each period of time under the statute before the expiration of such period, and the committee in its discretion may reserve a balance to provide for automatic increases in salaries determined upon by them and for salaries of new teachers.

PETITION, filed on December 6, 1921, in the Supreme Judicial Court for the county of Middlesex by eleven teachers in the public schools of Cambridge, who brought the petition "for the benefit of themselves and all of the other teachers in said schools, they having been appointed a committee for that purpose," against the members of the school committee, the mayor, the auditor and the treasurer of the city of Cambridge, for a writ of mandamus directing the expenditure and distribution of "the sum of $68,058.11, in addition to the amount" then "regularly provided," among the teachers of Cambridge, or, in the alternative, that the treasurer be ordered to transfer to the general treasury of the city for current use so much of that fund as should remain unexpended at the end of the then current fiscal year.

The respondents having filed answers, the case was referred to an auditor. Material facts found by the auditor are described in the opinion. The case thereafter came on to be heard before *Crosby,* J., on the auditor's report. He found the facts as stated in the auditor's report, and, at the request of both parties, reported the case upon the petition, answers and auditor's report for determination by the full court.

*F. W. Dallinger,* (*G. K. Richardson* with him,) for the petitioners.
*P. J. Nelligan,* for the respondents.

DE COURCY, J.  This is a petition for a writ of mandamus, brought by certain teachers in the public schools of the city of Cambridge, for the benefit of themselves and of all other teachers in said schools, against the school committee, the mayor, auditor and treasurer of said city.  Its main purpose is to compel the payment to the members of the teaching force of $37,818.11, raised under the provisions of Spec. St. 1919, c. 248, but unexpended by said committee.  As the case comes before us on the pleadings and auditor's report, the element of discretion is not involved, and the only question for determination is whether the writ ought to issue as matter of law.  *Boucher* v. *Salem Rebuilding Commission,* 225 Mass. 18.

In the year 1914 the school committee established a schedule of salaries for teachers, which provided automatically for certain annual increases according to length of service.  The length of time required thereby to reach the maximum pay depended on the salary the teacher was receiving in 1914: nine years being necessary in a few instances, only two or three years in some, and from four to five years in most cases.  This schedule never worked well, for reasons stated in the report of the auditor.  In 1919 when said special act was passed, a large majority of all the teachers in the schools appeared to be receiving salaries that did not agree with this schedule.

The special act (Spec. St. 1919, c. 248) provided that for the increase of compensation of persons serving in the public day schools of Cambridge in certain capacities, the school committee might appropriate and expend (in addition to sums then authorized) fifty-two and one half cents on each $1,000 of taxable property for the period from January 1 to March 31, 1920, and $2.10 for each financial year thereafter.  Section 2 reads: "If any increase in compensation is provided in accordance with the terms of this act it shall be in addition to any increase now regularly provided for by legislative act or by the rules, regulations and standing orders of said school committee."

A new schedule for teachers' salaries was made by the school committee early in 1920.  By this the minimum salary in each grade was advanced to the maximum salary under the 1914

schedule, and automatic increases were provided for until a new maximum should be reached, the time between the minimum and maximum being set at six years. The fiscal year began on April 1, and the new schedule undertook to use approximately said fifty-two and one half cents, which left a surplus. For the fiscal year beginning April 1, 1920, the schedule as adopted left an additional excess. It was estimated that there would be a decreasing amount each year, owing to automatic increases, until 1925; after which time the surplus would be practically exhausted, and it would be impossible to carry further the schedule of 1920. Since the passage of said special act the school committee has made the maximum appropriations under the terms of that act, amounting to $630,661.61 for the period from January 1, 1920, to March 31, 1922. As the auditor has found, the unexpended balance ($37,818.11) is held in reserve to be applied only to payment of salaries of teachers.

The chief contention of the petitioners is that the statute requires all money appropriated in each period of time to be expended before the expiration of such period; that the school committee were not justified in reserving any balance to provide for the automatic increases, or for salaries of new teachers; and that the existing balance should now be ordered distributed. In testing the reasonableness of this proposed construction of the statute, we must consider the following findings of the auditor: that the new schedule had to be based on an estimate, as it was impossible to tell exactly how much money would be available; that it was practically impossible to make a schedule which would exactly use the entire $2.10; that it was reasonable there should be such a balance unexpended; and that the amount unexpended is reserved to meet automatic increases provided by the schedule of 1920 or for new teachers. It must also be borne in mind that if the school committee should be deprived of this unexpended balance, the salary schedule presumably must be disrupted, and salaries reduced or other necessary requirements of the school system curtailed. Further, the statute if so construed would be inconsistent with the established legislative policy to entrust to the judgment of the school committee, exercised in good faith, the power to fix the salaries of teachers, and to make all reasonable rules and regulations for the management of the public schools.

St. 1915, c. 267, Part I, §§ 32, 35. *Leonard* v. *School Committee of Springfield,* 241 Mass. 325. *Averell* v. *Newburyport,* 241 Mass. 333. In view of these considerations, it would require more explicit language to warrant the construction of the statute claimed by the petitioners. When this act is considered in connection with St. 1911, c. 441, which expressly authorizes the school committee to carry unexpended balances to their credit for use in subsequent years for school purposes, it seems to us that the committee were justified in carrying over the unexpended balances.

There is nothing due to the petitioners under the 1914 schedule. It contemplated annual increases of salary until the maximum was reached; but that schedule was superseded by the new one, which the committee had power to make. Even those teachers who had not attained the maximum under the old schedule were advanced to that amount; as the maximum of the old schedule was made the minimum of the new.

The contention that a certain proportion of the amount received by the school committee from the tax on intangibles (see G. L. c. 44, § 30) should be included in the amount payable to the teachers, does not seem to be open on the petition. Assuming that it is, while that statute provides for the appropriation, for the use of the school department, of a certain proportion of the proceeds of the tax upon incomes, it does not specify that any particular percentage thereof shall be applied by the committee to the payment of salaries.

*Petition dismissed.*